AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of New York

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| v. | ) |
| JUAN CORREA, SR.; JUAN CORREA, JR. | )   Case No.   5:24-MJ-*344 (TWD)* |
| and ASHLEY CORREA, | ) |
| | ) |
| | ) |
| | ) |
| **Defendant(s)** | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of on or about May 4, 2024 to July 19, 2024 in the county of Onondaga in the Northern

District of New York the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846 | Conspiracy to Possess with Intent to Distribute Five (5) Kilograms or More of a Mixture and Substance Containing a Detectable Amount of Cocaine, a Schedule II Controlled Substance |

This criminal complaint is based on these facts:
See affidavit

☒     Continued on the attached sheet.

_____
*Complainant's signature*

Andrew J. Quinn, Task Force Officer
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   July 29, 2024

_____
*Judge's signature*

City and State:   Syracuse, New York

Hon. Thérèse Wiley Dancks, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

## AGENT BACKGROUND

Andrew J. Quinn, a Task Force Officer with the United States Drug Enforcement Administration ("DEA"), being duly sworn, deposes and says:

1.       I make this affidavit in support of a criminal complaint charging **JUAN CORREA SR, JUAN CORREA JR,** and **ASHLEY CORREA** with conspiring to possess with the intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846.

2.       I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been since 2021. I am currently assigned to the DEA Syracuse Resident Office, in Syracuse, New York.  As such, I am an "investigative or law enforcement officer" of the United States, as defined by 18 U.S.C. § 2510(7), who is empowered by law to conduct investigations and make arrests for offenses enumerated in 21 U.S.C. § 801 and 18 U.S.C. § 2516. I have been a sworn member of the Syracuse Police Department since May 16, 2008. As a former member of the Uniform Patrol Bureau of the Syracuse Police Department, my duties included responding to police calls as well as the enforcement and investigations of violations of NYS Penal Law Articles 220.00, 222.00 and 265.00 of the Penal Law of New York State. I have been involved in hundreds of street-level drug investigations and have personally made hundreds of arrests for street-level drug offenses in the City of Syracuse, acting in my former capacity as a Police Officer. Additionally, I have drawn and executed numerous drug search warrants as well as

1

assisted in conducting numerous drug search warrants and investigations.

3.      I have participated in several multi-agency narcotics investigations. During the course of these investigations, I have conducted or participated in surveillance, undercover transactions, execution of search warrants, debriefings of informants and reviews of tape-recorded conversations and narcotics records. I have participated in numerous searches of residences, businesses and vehicles in which controlled substances, drug paraphernalia, currency, and records were discovered. My experience as well as conversations with other law enforcement officers, as detailed herein, will serve as the basis for any opinions or conclusions set forth below. I have personally participated in the investigation of the offenses set forth below and as a result of my participation and my review of past and present reports made by other Special Agents of the DEA, and other state and local law enforcement agencies, I am fully familiar with the facts and circumstances of this investigation. My experience as well as conversations with other law enforcement officers, as detailed herein, will serve as the basis for any opinions or conclusions set forth below.

4.      I base this affidavit on having personally participated in the investigation of the offenses set forth below and as a result of my participation and my review of past and present reports made by other Special Agents of the DEA, and other state and local law enforcement agencies, I am fully familiar with the facts and circumstances of this investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause to support a criminal complaint, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts which I believe are necessary to establish probable cause for the complaint.

2

## FACTS ESTABLISHING PROBABLE CAUSE

5.      Since June 2021, members of the DEA, Internal Revenue Service – Criminal Investigation (IRS-CI), United States Postal Inspection Service (USPIS), Homeland Security Investigation (HSI), Syracuse Police Department (SPD), New York State Police (NYSP) and other state and local law enforcement agencies have been investigating **Alex CALCANO-CARRASQUILLO, Juan CORREA SR, Juan CORREA JR, and Ashley CORREA (CORREA DTO)** with regard to the distribution of cocaine in the Syracuse, New York area. That investigation has revealed that between June 2021 and July 2024, eight USPS priority mail parcels mailed from Puerto Rico that were destined for addresses associated with the **CORREA DTO** located within the city of Syracuse were seized pursuant to federal search warrants. The parcels all appear to be related based upon similar handwriting on the parcels, the weight and dimensions of the parcels, the locations they were mailed from and to, and the manner in which the cocaine was packaged inside the parcels. These parcels were seized and opened pursuant to federal search warrants issued in the Northern District of New York. Each of these parcels were found to contain kilogram quantities of cocaine.   In total, approximately twenty-one (21) kilograms of cocaine were seized from these eight parcels.   The packaging from each seized parcel was forensically analyzed by the United States Postal Inspection Service Forensic Laboratory Services (USPIS FLS) for the presence of latent fingerprints, and **CALCANO-CARRASQUILLO1's** fingerprints were found on the interior of 4 of the parcels and on the exterior of another.

6.      During the course of the investigation, DEA has also obtained evidence of the

---

1 **CALCANO-CARRASQUILLO** has been charged separately in Criminal Complaint 5:24-MJ-331 (TWD) that was unsealed today in Puerto Rico at his initial appearance.

drug conspiracy through wiretap intercepts, surveillance, toll analysis and debriefings.

## WIRETAP INVESTIGATION

7.      During the course of the investigation, law enforcement has been able to identify through physical surveillance, wire interceptions, toll analysis, and analysis of previously acquired voice recordings that Juan **CORREA JR** is the user of **SUBJECT TELEPHONE #4** (315) xxx-3818 and **SUBJECT TELEPHONE #6** (315) xxx-1196; **Juan CORREA SR** as the user of **SUBJECT TELEPHONE #5** (315) xxx-5486, **Ashley CORREA** as the user of **SUBJECT TELEPHONE #7** (315) xxx-4002 and **CALCANO-CARRASQUILLO** as the user of **SUBJECT TELEPHONE #8** (787) xxx-0911 and **SUBJECT TELEPHONE #9** (787) xxx-6351.

### MAY 4 PACKAGE

8.      On May 4, 2024, at approximately. 12:07 p.m. an incoming text message (session #16) was intercepted over **SUBJECT TELEPHONE #4** utilized by Juan **CORREA JR** and Juan **CORREA SR** utilizing **SUBJECT TELEPHONE #5**. The following is a transcript of the text message:

CORREA SR:          They on the way

9.      Shortly thereafter, at approximately 12:36 p.m., an outgoing text message (session #17) was intercepted over **SUBJECT TELEPHONE #4** between **CORREA JR** and **CORREA SR** utilizing **SUBJECT TELEPHONE #5**. The following is a transcript of the text message:

CORREA JR:          Ok

10.     On May 5, 2024, investigators from the United States Postal Service identified USPS Priority mail parcel 9505511405724125482897 ("Parcel 897") weighing approximately 11

4

pounds destined for an address on Cortland Avenue, Syracuse, New York (hereinafter referred to as the "Cortland Residence"). This notification showed that this parcel was mailed from Carolina, Puerto Rico on May 4, 2024, and was accepted by the United States Post Office at that location at 9:42 a.m.

11.     Based on your affiant's training, experience and knowledge of this investigation, your affiant believes that when **CORREA SR** sent the text message stating "They on the way" to **CORREA JR**, he was informing him that a parcel containing cocaine was on its way to Syracuse, New York.

12.     On May 6, 2024, surveillance was established at and in the immediate vicinity of the Cortland Residence with the objective being to surveil the delivery and any subsequent activity surrounding the Parcel 897.  At approximately 2:36 p.m., a United States Postal Services delivery truck arrived in front of the residence.  The mail carrier was then observed retrieving a package from the delivery truck and placing it inside of the front door of the Cortland Residence. At approximately 2:37 p.m., an unknown subject was observed opening the front door of the Cortland Residence, checking the mailbox on the exterior of the residence, and then re-entering and closing the door.

13.     Roughly half an hour later, on May 6, 2024, at approximately 3:09 p.m., an incoming text message (session #51) was intercepted over **SUBJECT TELEPHONE #4** between **CORREA JR** and **CORREA SR** utilizing **SUBJECT TELEPHONE #5**. The following is a transcript of the text message:

CORREA SR:          Yo call me I got that

14.     Shortly thereafter, at approximately 3:16 p.m., an outgoing call (session #52) was intercepted over **SUBJECT TELEPHONE #4** between **CORREA JR** and **CORREA SR** utilizing **SUBJECT TELEPHONE #5**. The following in a transcript of the call which was translated from Spanish to English:

| | |
|---|---|
| CORREA SR: | Talk to me! |
| CORREA JR: | Talk to me! |
| CORREA SR: | Give 1500 to the [inaudible, possibly "female"] on the south side and go and get the box. |
| CORREA JR: | Ight. |
| CORREA SR: | Grab 1 for you and give Ashley the rest. |
| CORREA JR: | Okay. |
| CORREA SR: | Okay. I got some more coming up this week. |
| CORREA JR: | Ight. |
| CORREA SR: | It looks like is dry down there. |
| CORREA JR: | Alright. |
| CORREA SR: | Okay. |

[End of call]

15.     At 3:29 p.m. a black Honda Accord bearing New York Registratuion LGK 8373 was observed pulling into the driveway of the Cortland residence and parking. **CORREA JR** was then observed exiting the driver's seat of the vehicle, walking onto the front porch of the residence and knocking on the door. At approximately 3:30 p.m. the front door opened and **CORREA JR** was observed entering the residence. At approximately 3:32 p.m., **CORREA JR** was observed exiting the residence carrying a black and orange reusable style grocery bag that

6

appeared to be relatively heavy. He then re-entered the Honda that he arrived in and left the residence. **CORREA JR** was then followed and it appeared that he had an unidentified passenger in the front passenger seat of the vehicle. At approximately 3:36 p.m., **CORREA JR** pulled over to the side of the road near the intersection of Bellevue Avenue and Hudson Street where he was observed exiting the vehicle and entering a corner store at that location empty handed. At 3:39 p.m., **CORREA JR** exited the store, re-entered the Honda and proceeded to drive directly to a residence on Nelson Street, Syracuse, New York (hereinafter referred to as the "Nelson Residence") at approximately 3:46 p.m. The investigation in this case has revaled that Ashley **CORREA** lives in the second floor apartment of the Nelson Residence. Once **CORREA JR** arrived at the Nelson Residence, **CORREA JR** was observed exiting the vehicle holding an object under his shirt and close to his body in what appeared to be an attempt to conceal it from view. He then walked on to the front porch of the Nelson Residence and out of the view of units conducting surveillance. At approximately 3:48 p.m., **CORREA JR** was observed walking away from the Nelson Residence empty handed. As he neared the roadway, he paused, looked back at the residence and appeared to be having a conversation with an unknown person who was believed to be speaking to him from the second floor of the Nelson Residence. **CORREA JR** was then observed re-entering the Honda at approximately 3:48 p.m. and was then followed directly to a residence on Cadwell Street, Syracuse, New York (hereinafter referred to as the "Cadwell Residence"), arriving at 3:52 p.m. **CORREA JR** then exited the Honda carrying the same black and orange reusable style grocery bag and entered the front door to the residence.

16. Based on your affiant's training, experience and knowledge of this investigation, it is your affiant's belief that when **CORREA SR** sent the text message to **CORREA JR** stating

7

"Yo call me I got that," he was informing **CORREA JR** that the package containing cocaine just got delivered to the Cortland Residence.  Your affiant also believes that when **CORREA SR** tells **CORREA JR** "Give 1500 to the [inaudible, possibly "female"] on the south side and go and get the box", **CORREA SR** is telling **CORREA JR** to pay the person who resides at the Cortland Residence who received the parcel, $1,500 for accepting the delivery and to pick up the cocaine from that residence.  In addition, your affiant believes that when **CORREA SR** tells **CORREA JR** "Grab one for you and give Ashley the rest" he is instructing **CORREA JR** to take one kilogram of cocaine from the package for him to distribute and give **Ashley CORREA** the remaining cocaine from the package for her to further distribute.  Also, it is your affiant's belief that when **CORREA JR** entered the Cortland Residence empty handed and exited with the black and orange reusable style grocery bag, he retrieved the cocaine from within the residence and was using the black and orange bag to conceal the kilograms of cocaine.  Additionally, your affiant believes that when **CORREA JR** approached the Nelson Residence holding an object under his shirt and then left with nothing in his hands, he delivered a quantity of cocaine from the USPS parcel to **Ashley CORREA** at the Nelson Residence.

17.    On May 21, 2024, USPIS Inspector William Price received video surveillance footage from May 4, 2024 from the Carolina Post Office in Carolina, Puerto Rico.  A review of that surveillance footage confirmed that **Alex CALCANO-CARRASQUILLO** mailed the United States Postal Service parcel bearing tracking number 9505 5114 0572 4125 4828 97.

**MAY 18, 2024 PACKAGE**

18.    On May 18, 2024 at approximately 10:19 a.m., an incoming text message (session #58) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and

**CALCANO-CARRASQUILLO** utilizing **SUBJECT TELEPHONE #9**. The following is a transcript of the text message:

CALCANO-CARRASQUILLO: 9505510540974139496938

[End of Message]

19.     Shortly thereafter, at approximately 10:20 a.m., an incoming call (session #58) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CALCANO-CARRASQUILLO** utilizing **SUBJECT TELEPHONE #9**. The following in a partial transcript of the call which was translated from Spanish to English:

| | |
|---|---|
| CALCANO-CARRASQUILLO: | So... good. But what I gave you [Pause] I already put it for you, heard me? |
| CORREA SR: | It's okay. |
| CALCANO-CARRASQUILLO: | What we are going to do is, you guys take, you guys take 5 and leave 1 for me. Then, you have 1 left and a couple of pesos when you get home I'll give you the [Unintelligible] |
| CORREA SR: | Alright, okay. |
| CALCANO-CARRASQUILLO: | Okay. When it arrives to your home then take a picture and that's it. |
| CORREA SR: | Alright, okay. |
| CALCANO-CARRASQUILLO: | Alright. |

20.     On May 18, 2024, investigators from the United States Postal Service identified USPS Priority mail parcel 9505510540974139496938 ("Parcel 938") weighing approximately 9 pounds 15.00 ounces destined for an address on Fenton Street, Syracuse, New York (hereinafter

referred to as the "Fenton Residence"). This notification showed that this parcel was mailed from San Juan, Puerto Rico on May 18, 2024, and was accepted by the United States Post Office at that location at 9:20 a.m.

21.     Based on your affiant's training, experience and knowledge of this investigation, your affiant believes that when **CALCANO-CARRASQUILLO** sent the text message stating 9505510540974139496938 to **CORREA SR,** he was providing **CORREA SR** with the tracking number for the parcel containing cocaine was on its way to Syracuse, New York. This was further confirmed through the follow-up telephone call.

22.     On May 18, 2024 at approximately 6:52 p.m., an outgoing text message (session #102) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6.** The following is a transcript of the text message:

CORREA SR: 9505510540974139496938

23.     On May 18, 2024 at approximately 6:53 p.m., an outgoing text message (session #103) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6.** The following is a transcript of the text message:

CORREA SR: Check it in the morning

24.     On May 18, 2024 at approximately 7:02 p.m., an incoming text message (session #104) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6.** The following is a transcript of the text message:

10

CORREA JR: Okay

Based on your affiant's training, experience and knowledge of this investigation, your affiant believes that when **CORREA SR** sent the text messages to **CORREA JR** he was providing the tracking number for the parcel containing cocaine that was on its way to Syracuse, New York from Puerto Rico.

25.     On May 20, 2024 USPIS Inspector Price located Parcel 938 at the Taft Road USPS post office/hub.  Inspection of the parcel revealed it to be a white, red, and blue USPS cardboard box approximately 12" x 12" x 10" and weighing approximately 10 pounds.  These physical characteristics are consistent with parcels previously seized found to contain cocaine and/or parcels not seized but suspected of containing cocaine.

26.     On May 20, 2024 at approximately 9:56 p.m., an outgoing text message (session #136) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6**. The following is a transcript of the text message:

CORREA SR: Yo is there so be up early tomorrow

27.     On May 20, 2024 at approximately 9:59 p.m., an incoming text message (session #137) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6**. The following is a transcript of the text message:

CORREA JR: Ikno

28.     Based on your affiant's training, experience and knowledge of this investigation,

11

your affiant believes that **CORREA SR** was telling **CORREA JR** that the aforementioned parcel had arrived in Syracuse (consistent with USPS tracking information) and **CORREA JR** was acknowledging this.

29.     On May 21, 2024 at approximately 12:33 p.m., an outgoing call (session #159) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6**. The following is a partial transcript of the call which was translated from Spanish to English:

| | |
|---|---|
| CORREA JR: | Talk to me |
| CORREA SR: | What are you doing? |
| CORREA JR: | Here, waiting for that. |
| CORREA SR: | Okay. |
| CORREA SR: | Okay. That's fine. Call me when it gets there. |
| CORREA JR: | Okay. |
| CORREA SR: | Okay. |

[End of Call]

30.     Based on your affiant's training, experience and knowledge of this investigation, your affiant believes that **CORREA JR** is telling **CORREA SR** that he is waiting for the aforementioned parcel containing cocaine to be delivered. **CORREA SR** acknowledges this and tells **CORREA JR** to call him as soon as he receives it.

31.     On May 20, 2024 at approximately 9:59 p.m., an incoming text message (session #137) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6**. The following is a transcript of the text

message:

    CORREA JR: Ikno

    [End of Message]

32.    Based on your affiant's training, experience and knowledge of this investigation, your affiant believes that **CORREA SR** was telling **CORREA JR** that the aforementioned parcel had arrived in Syracuse (consistent with USPS tracking information) and **CORREA JR** was acknowledging this.

33.    On May 21, 2024 at approximately 10:41 a.m., surveillance observed **CORREA JR** exit the Cadwell Residence and walk to the Fenton Residence where he sat on the front steps. A few minutes later a grey Toyota Venza arrived at the residence and the driver (Individual 1) unlocked the front door and entered the residence. **CORREA JR** entered the driver's seat of the Venza and a short time later Individual 1 exited the residence and entered the front passenger seat of the Venza. **CORREA JR** then drove the Venza to an address on Rowland Street where a female entered the backseat of vehicle. The Venza then returned to the Fenton Street Residence where the female exited the vehicle and was let into the residence by an unknown person inside. **CORREA JR** and Individual 1 then drove to a residence on Gifford Street, remaining at this location for over an hour.

34.    On May 21, 2024, at approximately 12:38 p.m., surveillance was established in the area of the Fenton Residence with the objective being to surveil the delivery of the aforementioned parcel and any subsequent activity afterwards. A USPIS inspector operating in an undercover capacity as a letter carrier, delivered the aforementioned parcel to the Fenton Residence and placed it on the front steps within view of surveillance. At approximately 12:41

p.m., **CORREA JR,** who was standing in the parking lot of a Gifford Street Residence, entered a maroon Toyota Avalon bearing NY Registration that was parked in the parking lot. **CORREA JR** then drove directly to the the Fenton Residence where he backed in the driveway. **CORREA JR** looked around before taking the USPS parcel off the front porch and placing it in the backseat of the Toyota Avalon. **CORREA JR** then drove around the block and pulled into the driveway of the Cadwell Residence. **CORREA JR** exited the car and carried the USPS parcel to the residence, unlocking the door of the residence to enter.

35.    On May 21, 2024 at approximately 12:52 p.m., an incoming call (session #160) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6**. The following is a transcript of the call which was translated from Spanish to English:

| | |
|---|---|
| CORREA JR: | Yo. [Pause] Yo! [Pause] Hello! |
| CORREA SR: | Hello. |
| CORREA JR: | Done. |
| CORREA SR: | Done? |
| CORREA JR: | Yes. |
| CORREA SR: | Okay. Give it to Ashley. |
| CORREA JR: | Ight, um [Pause] I grabbed one and I have the money here. |
| CORREA SR: | Oh! You're done? |
| CORREA JR: | Yeah, long time ago. |
| CORREA SR: | Ah, okay. Yeah! We need to move quick because of the house. |
| CORREA JR: | Okay. |

| CORREA SR: | I will give you the other [Pause] tell 'em, tell 'em [Pause] |
|---|---|
| CORREA JR: | Yeah, I, I, [Stammers] I finished long time ago. I was just helping this bitch. |
| CORREA SR: | Oh, that's fine. Well, give her [Pause] tell her to bring it to (**Co-Conspirator #1** personal identifiers redacted) |
| CORREA JR: | Okay, because he, he stopped me 2 days ago, and he said "What up" and I'm like "Nah, I'm down man" |
| CORREA SR: | Yeah, yup, I think it's because maybe [Pause] because he was given [Pause] only 3 came in, one for each and [Pause] and I think he is dry too. |
| CORREA JR: | Yeah, yeah. He told me he was dry because he pulled me over in front of my house. |
| CORREA SR: | Okay. Tell (her) to bring it, to bring it to **Co-Conspirator #1**[2]. [Unintelligible]. |
| CORREA JR: | Ight. |
| CORREA SR: | Okay. |

36.     Based on your affiant's training, experience and knowledge of this investigation, your affiant believes that **CORREA JR** is telling **CORREA SR** that he received the parcel and is taking one kilogram of cocaine and has the money for a prior kilogram of cocaine which **CORREA JR** received in a parcel that arrived on May 6, 2024.  I further believe that when **CORREA SR** tells **CORERA JR** to "[g]ive it to Ashley," he means for **CORREA JR** to give the other kilograms of cocaine in the package to **Ashley CORREA**.  Moreover, when **CORREA SR** says to "tell her to bring it to **Co-Conspirator #1** (personal identifiers redacted)," I believe he means for **CORREA JR.** to tell **Ashley CORREA** to give the kilograms of cocaine to **Co-**

---

2   The actual name is an identified name and CORREA Sr. states to give it to that specifically identified person's spouse.

**Conspirator #1.**

37.     At approximately 12:58 p.m., **CORREA JR** exited the Cadwell Residence carrying a large black trash bag and placed it near a garbage can by the front porch. **CORREA JR** then left in the Toyota Avalon and returned to a residence on Gifford street.

38.     Subsequent surveillance revealed a package subsequently being picked up from the Cadwell Residence by **Co-Conspirator #2** a known associate of Ashley CORREA and eventually being delivered to Co-Conspirator #1 as **CORREA SR** instructed.

39.     On May 21, 2024 at approximately 2:21 p.m., an outgoing text message (session #163) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **ASHLEY CORREA** utilizing **SUBJECT TELEPHONE #7**. The following is a transcript of the text message:

> CORREA SR: Your brother got 2 more for you

40.     On May 21, 2024 at approximately 2:21 p.m., an outgoing text message (session #164) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **ASHLEY CORREA** utilizing **SUBJECT TELEPHONE #7**. The following is a transcript of the text message:

> CORREA SR: Give them to **[Co-Conspirator #1]**

41.     On May 21, 2024 at approximately 3:58 p.m., an incoming text message (session #169) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **ASHLEY CORREA** utilizing **SUBJECT TELEPHONE #7**. The following is a transcript of the text message:

ASHLEY CORREA: Yea got it

42.     Based on your affiant's training, experience and knowledge of this investigation, your affiant believes that when **CORREA SR** tells **Ashley CORREA** "Your brother got 2 more for you" and "Give them to **Co-Conspirator #1**", he is informing **Ashley CORREA** that **CORREA JR** has two kilograms of cocaine to give to her and that once she receives the cocaine from **CORREA JR** to give it to **Co-Conspirator #1**.

43.     On May 28, 2024, at approximately 8:23 p.m., an incoming call (session #323) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6**. The following in a transcript of the call which was translated from Spanish to English:

| | |
|---|---|
| CORREA SR: | Yo. |
| CORREA JR: | Yo. |
| CORREA SR: | Talk to me. |
| CORREA JR: | Um [Pause] nah um [Pause] how much you're gonna charge me for the other one I got? |
| CORREA SR: | Seventeen. |
| CORREA JR: | Seventeen. [Long pause] Ight. |

44.     Based on your affiant's training, experience and knowledge of this investigation, it is your affiant's belief that when **CORREA JR** asks **CORREA SR** "Um [Pause] nah um [Pause] how much you're gonna charge me for the other one I got?", **CORREA JR** is asking **CORREA SR** how much money **CORREA SR** is going to charge him for the kilogram of cocaine that he received on May 21, 2014. Your affiant also believes that when **CORREA SR**

17

tells **CORREA JR** "seventeen", he is informing **CORREA JR** that he owes him $17,000 for the cocaine.

45.     On May 30, 2024, at approximately 8:00 p.m., an outgoing text message (session #374) was intercepted over **SUBJECT TELEPHONE #5** between **CORREA SR** and **CORREA JR** utilizing **SUBJECT TELEPHONE #6**. The following is a transcript of the text message:

CORREA SR:          Tell Ash she owes me 15

[End of Message]

46.     Based on your affiant's training, experience and knowledge of this investigation, it is your affiant's belief that when **CORREA SR** tells **CORREA JR** "Tell Ash he owes me 15", **CORREA SR** is instructing **CORREA JR** to tell **Ashley CORREA** that she owes **CORREA SR** $15,000.00 for the cocaine.

**June 29, 2024 Package**

47.     On June 24, 2024, between 12:42 p.m. and 6:23 p.m., a text message conversation (session's #477 and #514) was intercepted over between **CALCANO-CARRASQUILLO** utilizing **SUBJECT TELEPHONE #8** and Juan **CORREA SR** utilizing cellular telephone number **315-XXX-7157**.  The following is a transcript of the text messages that were translated from Spanish to English:

CALCANO-CARRASQUILLO:     Casi estoi redi
TRASLATION:                          I'm almost ready

[End of message]
CORREA SR:                             Dale sin prisa esta lento. Estan muy baratos en
                                              Syracuse

TRANSLATION:                        Go ahead, there's no rush, it's slow.  They are very

18

cheap in Syracuse.

[End of message]

48.     Based on your affiant's training, experience and knowledge of this investigation, it is your affiant's belief that when **CALCANO-CARRASQUILLO** tells **CORREA SR** "I'm almost ready", **CALCANO-CARRASQUILLO** is informing **CORREA SR** that the next parcel containing cocaine is almost ready to be sent from Puerto Rico to Syracuse, New York.  It is also your affiant's belief that when **CORREA SR** tells **CALCANO-CARRASQUILLO** "Go ahead, there's no rush, it's slow.  They are very cheap in Syracuse", **CORREA SR** is telling **CALCANO-CARRASQUILLO** that there is no rush to send out the parcel containing cocaine because it is taking a while to sell the cocaine that was previously shipped to Syracuse because the cocaine is very cheap in Syracuse right now.

49.     On June 28, 2024, at approximately 7:35 p.m., an incoming call (session #703/704) was intercepted over **SUBJECT TELEPHONE #8** utilized by **CALCANO-CARRASQUILLO** and **CORREA SR** utilizing phone number 315-317-7157. The following is a partial transcript of the call that has been translated from Spanish to English:

| | |
|---|---|
| CALCANO-CARRASQUILLO: | Talk to me. |
| CORREA SR: | Chilling.  What's up? |
| CALCANO-CARRASQUILLO: | But, but I am ready. I'm going to send you what I have, what, what the Domi [Phonetics] gave me. That's guaranteed. I'm going to send you the same, but through the same, what I told you before. |
| CORREA SR: | Alright. |
| CALCANO-CARRASQUILLO: | I'm going to make everything in one, boom [Phonetics] to send it because I can't make 2 because I don't have enough. |

19

| | |
|---|---|
| CORREA SR: | Alright.  We will be waiting; there's no rush. |
| CALCANO-CARRASQUILLO: | Okay, you know, we are, we are there [STAMMERS] You let me know where, and that's it. |
| CORREA SR: | Yeah, yeah. |
| CALCANO-CARRASQUILLO: | Okay, okay |
| CORREA SR: | Alright, send it to the south, to [PAUSE] Let me see, 3-5 [Pause] to 3-5-2. |
| CALCANO-CARRASQUILLO: | Okay. |
| CORREA SR: | Go ahead. |
| CALCANO-CARRASQUILLO: | Okay, okay, alright. |
| CORREA SR: | Okay, go ahead. |
| CALCANO-CARRASQUILLO: | Yes. |
| CORREA SR: | Okay. |
| CALCANO-CARRASQUILLO: | Saturday. |
| CORREA SR: | Alright, go ahead. |
| CALCANO-CARRASQUILLO: | Alright. |

[END OF CONVERSATION]

50.    Based on my training, experience and knowledge of this investigation, it is my belief that when **CALCANO-CARRASQUILLO** tells **CORREA SR** "But, but I am ready. I'm going to send you what I have, what, what the Domi [Phonetics] gave me. That's guaranteed. I'm going to send you the same, but through the same, what I told you before." and "Okay, you know, we are, we are there [STAMMERS] You let me know where, and that's it", **CALCANO-**

20

CARRASQUILLO is telling CORREA SR that he is ready to send him another USPS parcel containing cocaine, that it will be the same amount as last time, and that he needs to know where to address the parcel.   It is also my belief that when CORREA SR tells CALCANO-CARRASQUILLO "Alright, send it to the south, to [PAUSE] Let me see, 3-5 [Pause] to 3-5-2," CORREA SR is informing CALCANO-CARRASQUILLO to send the parcel to the Cortland Residence.   I also believe that when CALCANO-CARRASQUILLO tells CORREA SR "Saturday," he is informing CORREA SR that he will be sending the USPS parcel containing cocaine on Saturday, June 29, 2024.

51.    On June 29, 2024, between 11:45 a.m. and 12:09 p.m., text message communications (sessions #729, #730, #732, #744, #745, #746 and #747) were intercepted over **SUBJECT TELEPHONE #8** utilized by **CALCANO-CARRASQUILLO** and **CORREA SR** utilizing 315-317-7157.  The following is a transcript of the text messages that were translated from Spanish to English:

| CALCANO-CARRASQUILLO: | 95055114057141815 17329 |
| --- | --- |
| CALCANO-CARRASQUILLO:<br>TRANSLATION: | Dime<br>Tell me |
| CORREA SR:<br>TRANSLATION: | Si LA coji<br>Yes, I got it |
| CALCANO-CARRASAQUILLO:<br>TRANSLATION: | 3 y1<br>3 and 1 |
| CALCANO-CARRASQUILLO:<br>TRANSLATION: | Tienes<br>You have |
| CALCANO-CARRASQUILLO:<br><br>TRANSLATION: | Abla con eyos el próximo sábado  el hombre llega le compro el otro tuyo<br>Talk to them next Saturday the man arrive I'll buy your other one |

21

| CALCANO-CARRASQUILLO: | Trata de q eyos muevan eso rápido para comprar muchos |
|---|---|
| TRANSLATION: | Make sure they move that quickly so we can buy many |

[End of message]

52.     On June 29, 2024, investigators from the United States Postal Service identified USPS Priority mail parcel 9505511405714181517329 weighing approximately 12 pounds 12.00 ounces destined for the Cortland Residence.  This notification showed that this parcel was mailed from San Juan, Puerto Rico on June 29, 2024, and was accepted by the United States Post Office at that location at 9:25 a.m.

53.     Based on my training, experience and knowledge of this investigation, I believe that when **CALCANO-CARRASQUILLO** sent the text message stating "9505511405714181517329" to **CORREA SR,** he was providing **CORREA SR** with the tracking number for the parcel containing cocaine was on its way to Syracuse, New York.  It is also my belief that when **CORREA SR** responds "Yes, I got it", **CORREA SR** is telling **CALCANO-CARRASQUILLO** that he received his text message providing him with the tacking number for the USPS parcel containing cocaine.  I also believe that when **CALCANO-CARRASQUILLO** tells **CORREA SR** "3 and 1" and "you have," he is informing **CORREA SR** that there are four kilograms of cocaine in this package. I believe that when **CALCANO-CARRASQUILLO** tells **CORREA SR** "Make sure they move that quickly so we can buy many," he is telling **CORREA SR** to make sure that the cocaine is sold quickly so that they can make enough money to purchase more cocaine.

22

54.     On July 3, 2024, the United States Postal Service (USPS) Priority Mail (PM) parcel bearing tracking number 9505 5114 0571 4181 5173 29 was located at the USPS Taft Rd processing facility by Postal Inspector Price. This parcel is further described as a white carboard USPS Priority Mail Large Mailing Box, bearing the return address in Canovanas, Puerto Rico, and addressed to the Cortland Residence.  On the same date at 4:14 p.m., a search warrant was signed by the United States Magistrate Judge Andrew T. Baxter for the above referenced parcel.

55.     At 4:15 p.m. the search warrant was executed.   While opening the parcel, Inspector Price noticed that the flaps of the parcel appeared to be glued to each other. Within the parcel, Inspector Price located several layers of Puerto Rican newspaper and a rectangular object wrapped in several layers of clear plastic wrap. Inspector Price removed the plastic wrap and discovered a clear plastic container with another rectangular object inside wrapped in additional clear plastic wrap. Inspector Price unwrapped the rectangular object, which was wrapped in clear plastic wrap, Puerto Rican newspaper, carbon paper, and bubble wrap. Inspector Price located white powder compressed into four brick-like objects, which were sealed in vacuum sealed bags. Two of the objects were sealed together and two additional were sealed separately together. Inspector Price recognized the white powder and packaging to be consistent with cocaine. Inspector Price field tested a single brick from each two-brick bundle with the TruNarc handled narcotic analyzer. Both tests yielded a positive result for cocaine HCL. The total weight of the cocaine was approximately 4231.5 gross grams (approximately 4 kilograms).

56.     On July 5, 2024, at approximately 5:30 a.m., an outgoing text message (session #1043) was intercepted over **SUBJECT TELEPHONE #8** utilized by **CALCANO-**

CARRASQUILLO and Juan **CORREA SR** utilizing 315-317-7157.   The following is a transcript of the text messages that were translated from Spanish to English:

| CALCANO-CARRASQUILLO: | Puse 4 |
|---|---|
| Translation: | I put 4 |

57.    Based on your affiant's training, experience and knowledge of this investigation, it is your affiant's belief that when **CALCANO-CARRASQUILLO** tells **CORREA SR** "I put 4", he was referring to the four (4) kilograms of cocaine that he shipped to Syracuse, New York from Puerto Rico on June 20, 2024 via the USPS.

58.    On July 5, 2024, at approximately 9:40 a.m., an incoming call (session #1045/1047) was intercepted between **SUBJECT TELEPHONE #8** utilized by **CALCANO-CARRASQUILLO** and **CORREA SR** utilizing phone number 315-317-7157. The following is a transcript of the call that has been translated from Spanish to English:

CALCANO-CARRASQUILLO: Tell me my brother?

CORREA SR:                      Still hasn't arrived.

CALCANO-CARRASQUILLO: Oh, there was message but, oh well. He doesn't know that [Pauses] I sent four cameras.

CORREA SR:                      That it has not arrived yet, it hasn't shown up yet.

CALCANO-CARRASQUILLO: What is that?

CORREA SR:                      Yes, I already check, I'm checking on it and nothing.

CALCANO-CARRASQUILLO: How can that be my brother!

CORREA SR:                      Yes. [Audio glitch] nowhere.

CALCANO-CARRASQUILLO: But where does it- where does it show?

CORREA SR:                      It shows it left PR (Puerto Rico) and then... nothing.

24

| | |
|---|---|
| CALCANO-CARRASQUILLO: | Well I didn't check 'cause I was thinking- but that was on Tuesday and I said [Pauses] I said I remembered Monday and I said [Pauses] no let me just take it easy. |
| CORREA SR: | Well it was supposed to be for Wednesday but nothing. |
| CALCANO-CARRASQUILLO: | Since it left PR (Puerto Rico) then nothing. |
| CORREA SR: | Also, yesterday was a holiday, I'm checking right now but nothing, it's not even showing where it is now. |
| CALCANO-CARRASQUILLO: | Let me check- I'm going to [Pauses] I'm right here [Pauses] I'm right over here at "M", over here in |
| CORREA SR: | Yes nothing, it doesn't even show where it is yet. [Pauses] [Clears throat] Let see if it- |
| CALCANO-CARRASQUILLO: | [Audio glitch] Okay, I'm here nearby you if anything then [Pauses] you just give me a call. |
| CORREA SR: | [Audio glitch] I'm checking to see if [Pauses] if is for today or tomorrow. |
| CALCANO-CARRASQUILLO: | Alright then. |
| CORREA SR: | It's still shows [Audio glitch] [Pauses] All good, bye. |

59.     Based on your affiant's, training, experience and knowledge of this investigation, it is your affiant's belief that when **CORREA SR** tells **CALCANO-CARRASQUILLO** "Still hasn't arrived", he is informing **CALCANO-CARRASQUILLO** that the USPS parcel containing four (4) kilograms of cocaine that **CALCANO-CARRASQUILLO** shipped to 352 Cortland Avenue, Syracuse, New York via the USPS has not arrived yet.  It is also your affiant's belief that when **CALCANO-CARRASQUILLO** tells **CORREA SR** "I sent four cameras", he

is reassuring **CORREA SR** that he did in fact send the four (4) kilograms of cocaine via the USPS.

60.      On July 18, 2024, beginning at approximately 7:21 p.m. and continuing through 8:39 p.m. a series of text messages (sessions #3885, 3886, 3887, 3892, 3895) were intercepted over **SUBJECT TELEPHONE #7,** utilized by Ashley **CORREA** and Juan **CORREA SR** utilizing 315-317-7157.  The following is a transcript of the text messages:

| | |
|---|---|
| CORREA SR: | What up with your brother |
| Ashley CORREA: | +1 (315) [*3 digits redacted*]-1402 |
| Ashley CORREA: | That's his number |
| CORREA SR: | He doesn't answer you talked to him |
| Ashley CORREA: | He gotta be at the shop ima check |

61.      On July 19, 2024, beginning at approximately 12:04 p.m. and continuing through 6:00 p.m. a series of text messages (sessions #3943, 3944, 3945, 3989, 3993, 3997) were intercepted over **SUBJECT TELEPHONE #7,** utilized by Ashley **CORREA** and  and Juan **CORREA SR** utilizing 315-xxx-7157.  The following are transcripts of the text messages:

| | |
|---|---|
| CORREA SR: | Get my bread from your brother he ignoring  my Calls |
| Ashley CORREA: | Ima pull up to the shop now quick so ima see if he There |
| CORREA SR: | Yeah the last box my boy sent got lost somewhere in the fucking storm with 4 off them |
| CORREA SR: | Did you talk to your brother |
| Ashley CORREA: | Yea he said he not ready yet |
| CORREA SR: | Tell him to call me |

26

62.     Based on your affiant's, training, experience and knowledge of this investigation, it is your affiant's belief that when **CORREA SR** tells Ashley **CORREA**, "Yeah the last box my boy sent got lost somewhere in the fucking storm with 4 off them" he is telling **Ashley CORREA** that the four kilograms of cocaine sent by **CALCANO-CARRASQUILLO** is missing and has not been delivered to Syracuse, New York as expected.  Furthermore, when **CORREA SR** asks, "Did you talk to your brother" and Ashely **CORREA** responds, "Yea he said he not ready yet" **CORREA SR** is asking if Ashley **CORREA** talked to Juan **CORREA JR** about the money owed to **CORREA SR** for cocaine and when Ashley **CORREA** responded, "Yea he said he not ready yet"she is informing **CORREA SR** that **CORREA JR** did not have the money ready to be sent yet.

<u>**CONCLUSION**</u>

63.     In light of the foregoing, I respectfully submit that there is probable cause to believe that **Juan CORREA SR, Juan CORREA JR** and **Ashley CORREA** conspired to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Section 841(a)(1) and (b)(1)(A), and 846 of Title 21, United States Code.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE

27

REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

_____
Andrew J. Quinn
Task Force Officer
U.S. Drug Enforcement Administration

I, the Honorable Therese Wiley Dancks, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on July 29, 2024, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Therese Wiley Dancks
United States Magistrate Judge

28